COUCH v. CHARLOTTE, COLUMBIA & AUGUSTA R. R. CO.

1. A Circuit judge, having refused defendant's motion for non-suit, may afterwards, during the trial with the facts unchanged, order a non-suit of his own motion.
2. Where the judge, in his discretion, refuses to allow the plaintiff to introduce further testimony after closing, upon motion made both before and after an order of non-suit, he commits no error of law for which the verdict may be set aside.
3. In action by a laborer, against a railroad company, to recover damages for injuries received by reason of the negligence of a section master of the road, the position, duties, and powers of such section master having been proved, it was irrelevant and unnecessary to show what was the custom of other section masters in such matters.

4. Witnesses who know the position and character of an open water-way across a railroad track, are not therefore competent to state their opinion of the dangerous character of the place, and of the require-ment of prudence that notice should be given to one pushing a hand-car over it.

5. On the question of negligence, it is the right of the trial judge to determine whether there is any evidence to make a *prima facie* case, and, if not, he may grant a non-suit.

6. An employee assumes the risks of his employment; therefore a rail-road company is not answerable in damages for the injuries received by one of its section hands, from falling into an open water-way, pro-perly constructed, while pushing a push-car over his section of the road.

7. Nor for the failure of the section master to give to this laborer, work-ing on the road under him, special notice of the approach of the push-car to this water-way.

8. It seems that a section master is a representative of the company, to the extent to which he discharges the duties of his master, the com-pany, and not a fellow-laborer with the hands working under his orders.

Before WITHERSPOON, J., Aiken, April, 1884.

This was an action, by Watson E. Couch, to recover ten thou-sand dollars damages for injuries alleged to have been received through the negligence of the defendant company. The opinion sufficiently states the case.

*Messrs. Henderson Bros.*, for appellant.

*Messrs. J. H. Rion, Croft & Dunlap*, contra.

April 22, 1885. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This was an action brought by the plaintiff, an employee of "The Charlotte, Columbia & Augusta Railroad Company," to recover, from the said company, damages for a personal injury received by him in the discharge of his duty as a section hand on said railroad. He complained: "While pushing a hand-car up a grade for said company, and over the track of said railroad, the defendants carelessly, negligently, and without any warning whatever, caused the plaintiff to fall into a ditch, or water-way, not covered, and which was negligently con-

structed, by the said company, across the road-bed, and carelessly and negligently omitted, while approaching said ditch or water-way, to give any signal or notice whatever to plaintiff, by reason whereof the plaintiff was unaware of the danger. That by reason of the negligence and carelessness of the defendants, and without any fault on the part of the plaintiff, he was precipitated into the ditch or water-way, and by the fall his leg was broken below the knee," &c. The defendant corporation put in a general denial, and pleaded: "That the injuries alleged to have been received by the plaintiff, were not caused by any negligence on the part of the defendant or its servants, but was owing to the negligence and fault of the plaintiff himself."

The case came on to be heard before Judge Witherspoon. There was much testimony as to the circumstances under which the plaintiff received the injuries complained of, which is in the "Brief," and of course cannot be re-stated here. During the progress of the trial, the plaintiff's attorney asked one of his witnesses whether it was "the custom of section masters on the road to turn off hands when they displeased them" The judge would not allow the question to be answered, and plaintiff excepted. He asked another witness, William Davis, after he had described minutely the water-way where the plaintiff was injured, "to give *his opinion* as to the danger of the place." The judge also refused to allow this question to be answered, and plaintiff excepted.

When the plaintiff announced that he had closed, the defendant's attorney moved for a non-suit, which the judge refused. The defendant offered no testimony, and, before going to the jury, the plaintiff asked permission to offer further testimony, which had only come to his knowledge, as alleged, during the argument for a non-suit. The judge declined to admit further testimony, and sent the case to the jury. Before the argument closed the court adjourned for the day, and the next morning the judge announced that, after looking through the authorities, he had changed his mind, and thought there ought to be a non-suit. The plaintiff then renewed his request for leave to offer further testimony, which was refused, and the judge granted the following order: "At the close of the plaintiff's evidence, a motion for

a non-suit was made by the attorney for the defendant. After hearing argument in support of the motion, and in opposition thereto, the court decided to permit the case to go to the jury. There being no more evidence, after hearing most of the argument to the jury upon the merits of the case, as appears from the evidence, and the law applicable thereto, the court became convinced that the non-suit should have been granted, and, at this stage, arrested the case; and it is therefore ordered that the motion for non-suit be granted, and that the defendant have leave to enter up judgment of non-suit herein, and for the costs of this action."

From this order the plaintiff appeals to this court on various exceptions, which it will be necessary to take up *seriatim*, as the particular grounds upon which the non-suit was granted are not stated.

*First.* The plaintiff alleges that the judge committed error in granting the non-suit of his own motion after he had refused it when made by the defendant's counsel. There is nothing in the fact that the order was made without a motion to that effect being before the judge. *McCall* v. *Cohen*, 16 *S. C.*, 448. Nor do we see that it was beyond the discretion of the judge during the trial of the cause, and while the facts were unchanged, to correct his own rulings and grant a non-suit which he had before refused. He could lawfully make such an order. *Chichester & Co.* v. *Hastie*, 9 *S. C.*, 331.

*Second.* The plaintiff also alleges that the judge committed error in not allowing the plaintiff to introduce the testimony tendered by him, both after he had refused and after he had granted the non-suit. The plaintiff formally announced that his case was closed. After that the Circuit judge, in his discretion, sometimes in the interest of justice admits further testimony; but we do not understand that this is a right of the plaintiff which he may demand, but an indulgence extended in order that all the facts may be considered. When a Circuit judge in his discretion refuses such an application, we cannot say that in doing so he committed error of law, which would be sufficient to set aside the verdict.

*Third.* The plaintiff also excepts, that it was error not to

allow the plaintiff, Couch, when a witness on the stand, to testify as to the custom of section masters, other than Satcher, on the road of the defendants in employing and discharging hands. It appeared that Satcher was the boss of Section No. 3 on defendants' road; that his position, as expressed by one of the witnesses, was as follows: "He was overseer: he hired and discharged, got tools, and ordered the hands what to do, and it was his duty to keep the track in good condition." If there was no other objection to the testimony, after this proof, it was irrelevant and unnecessary to show what was the custom of other section masters in the matter indicated.

*Fourth.* The plaintiff also complains that the judge erred in not allowing William Davis and other witnesses, after they had stated the condition of the water-way, or heard it described by others, to go on and give their opinion as to the dangerous character of the place, and that prudence required that notice should have been given to one situated as the plaintiff was. The general rule certainly is that the mere opinions of witnesses are not admissible. There are some exceptions to the rule for particular reasons, but we do not think that any of them cover this case. The subject matter was not of such character as to authorize the introduction of opinion from the necessity of the case. See 1 *Greenl. Evid.*, 514; *Ward* v. *Charleston City R. R. Co.*, 19 *S. C.*, 525; *Jones* v. *Fuller, Ibid*, 66.

*Fifth.* The plaintiff finally excepts in general terms "that the Circuit judge erred in granting the non-suit." This certainly opens a very wide field, embracing all possible objections to the ruling. The order does not state the grounds on which the non-suit was granted, and the exception is as indefinite as the order itself. Under these circumstances we can do no more than consider the specific points made in the argument. It was urged that there were issues of fact involved in the case, and therefore the judge should not have decided it himself and ordered a non-suit, but should have referred it to the jury, the rule being as stated in *Davis* v. *C. & G. R. R. Co.* (21 *S. C.*, 93): "When there is any pertinent, competent, and relevant testimony to the facts in dispute, the case passes into the hands of the jury and beyond the judge."

The facts necessary to be understood are, briefly : In June, 1881, the plaintiff, Couch, was employed as a section hand to work on the railroad of the defendant corporation. He worked on the section nearest Vaucluse, where he had lived for some time, and in the gang of W. S. Satcher, who was boss or master of that section—No. 3. The second day after his employment the section squad (under their boss) left Vaucluse for their work on a hand-car, which was propelled by four men, one at each corner, sitting on the floor of the car, and putting their feet against the ends of the cross-ties on the track. There were three of the hands, Couch and two others, who were not expert in thus paddling, and on that account were called "dead-heads" ; and when they struck an up-grade these were required by the boss to jump out, and, walking behind the car, to push it forward with their hands or shoulders. In this way the party went over the road in the morning going to their work. As they were returning in the evening over the same road and came to an up-grade, Satcher ordered Couch and the two other "dead-heads" to get out and push. They did so, and were pushing when they approached the water-way, when the accident occurred. The other two jumped on the car, but Couch, the plaintiff, did not, but remained pushing, and fell into the water-way, and received the injuries of which he complains.

The allegation of the plaintiff was that the injuries he received were caused by the negligence and carelessness of the defendant corporation. That was the essential issue he tendered, and of course it was necessary for him to prove it before he could claim a verdict. In considering such an issue, is it necessary that every case, in which there is any testimony as to facts, should be sent to the jury ? As we understand it, negligence is not a simple fact in itself, but is rather an inference from facts. It is defined to be "want of ordinary care," and is generally understood to be a mixed question of law and fact. It is certainly the duty of the judge to define what it is ; and it seems that it is also his right to determine as "a preliminary question" whether there is any evidence to make a *prima facie* case, and if not, he may grant a non-suit. *Carter* v. *Columbia & Greenville R. R. Co.*, 19 *S. C.*, 23. In other words, as some one has expressed

it: "It is for the judge to say whether there are any facts in evidence from which negligence may be reasonably and legitimately inferred, and it is for the jury to say whether, from those facts, when submitted to them, negligence ought to be inferred." *Hooper* v. *C. & G. R. R. Co.*, 21 *S. C.*, 541; *Pierce R. R.*, 313; *Pleasants* v. *Fant*, 22 *Wall.*, 122.

Now, applying these principles to the facts of this case, can we say that the judge erred in not sending this case to the jury? Were there any facts proved by the plaintiff, and taken to be absolutely true, from which negligence on the part of the defendant corporation could be reasonably and legitimately inferred? The plaintiff's first specification was that the water-way across the track, into which he fell and was injured, was negligently constructed. We have read the testimony carefully and fail to discover any proof of this allegation, unless negligence could be inferred from the fact that it was not covered in, but left open. There was no evidence of a wagon road crossing the track at that point. It was not a place for private travel, and so far as concerned the railroad company itself, as the cars passed over it on stringers, the water-way accomplished its uses as well open as if it had been closed. But was leaving it open negligence in reference to the safety of employees on the road? It is true that a railroad company, like any other master, is under an implied obligation to provide suitable apparatus and appliances for their employees to prosecute their work "with a reasonable degree of safety to life and security against injury." But what are suitable appliances must always, to some extent, be determined by the nature of the business. The employee assumes the natural risks of his employment, and "if the company exercise reasonable or ordinary care in making such provision for the safety of its employees, it is not liable to them for injuries resulting from defects in such appliances. It does not undertake to warrant their completeness in all things." *Pierce on Railroads.* It seems that something may be left to the sense and volition of persons having intelligence. This water-way was not of recent construction. Other structures somewhat of the same character, such as cattle-guards, from the very purpose of their creation are always left open; and we cannot say that the judge committed

error of law in concluding that the fact of the water-way remaining uncovered was not sufficient, as against employees upon the road, reasonably and legitimately to raise the inference of negligence on the part of the company.

The only other allegation of negligence was in not giving the plaintiff specific notice of the condition of the water-way when he was employed or at the time of the accident. As involved in this question, it was stoutly contested at the bar whether the section master, Satcher, was a middle-man or fellow-servant of the plaintiff within the meaning of the rule upon that subject. As to who are fellow-servants, within the meaning of the common law rule that exempts the master or employer from responsibility for injuries to one from the negligence of the other, there has been much diversity of opinion. The cases are not only not in accord, but are absolutely contradictory. In this confusion, we think we have discovered that there is a manifest tendency in the latest authorities to follow principle and to make the employer responsible wherever the act complained of was done by one placed in authority by the principal to discharge some of the duties of the principal, and in regard to which he is the representative of the company and as such entitled to be obeyed. As we understand it, that is the principle of the rule. As was said by Mr. Justice McIver, in the second opinion of this court in *Gunter* v. *Graniteville Manufacturing Co.* (18 *S. C.*, 270): "The true test is whether the person in question is employed to do any of the duties of the master; if so, then he cannot be regarded as a fellow-servant or co-laborer with the operatives, but is the representative of the master, and any negligence on his part in the performance of the duty of the master thus delegated to him must be regarded as the negligence of the master," &c.

This rule has the recommendation of resting on sound principle, and has been sustained and illustrated by a number of cases very recently decided and reported in 15 *American & English Railroad Cases*, from page 304 to 330. It is there announced, in reference to section masters and positions of similar character, as the better opinion upon the subject, that "a servant having the exclusive control over other servants under a common master,

including the power of hiring and discharging, is, in the exercise of those powers, the representative of the master and not a mere fellow-servant." In the case of *Gilmore* v. *Northern Pacific Ry. Co.* (reported as above), a section boss having charge of a squad of hands, but all under a general superintendent, directed a laborer to assist in thawing a quantity of frozen giant powder before an open fire, in which operation the plaintiff was blown up and severely injured. He sued the company for the act of the section master and the court held that the plaintiff was entitled to recover; that "the rule first suggested in *Priestley* v. *Fowler* (3 *M. & W.*, 1), that a master who has exercised due care in the employment of his servants is not responsible for an injury sustained by one of them in the course of his employment by the negligence of another, however distinct the grade or different the labor of such servants, or how widely separated the locality of their several employments, is being modified by the course of judicial opinion and decision so as to meet the ends of justice in cases since arising of corporations and others engaged in varied and widely extended operations under one nominal and invisible head, but in reality divided into separate parts or divisions under the direction and control of local bosses, superintendents, or heads of departments, who, to all intents and purposes, represent and stand for the corporation with practically unqualified power to employ, direct, and discharge workmen," &c.

Assuming, then, that, in the control and direction of his squad of hands, Satcher was in the performance of duties of the company and to that extent their representative, did he do or omit to do anything from which negligence, binding on his principal, could be fairly and reasonably inferred? He had been delegated the power to command Couch and if, like the section master on the Northern Pacific R. R., he had ordered him to do something out of the line of his duty, something not within the scope of his employment, and in doing so he had been injured, we incline to think the company would have been liable. But he was hired as a laborer on that section of the road, and we do not see that it was outside of his employment when he was directed to get down and push behind the car. As they approached the open water-gap he was not prevented from jumping on the cars as his com-

panions did. If Satcher had ordered him to remain on the track and continue pushing, it may be that the company would have been responsible for the consequences. It is laid down as one of the duties of a railroad company to notify servants of peculiar dangers which are not known or obvious to them, but it is also a rule that employees are presumed to take the natural risks of their employment and not arising from its negligence. *Pierce R. R.*, 371. We cannot affirm that the judge committed error of law in considering either that the risk in this case was incident to the employment or that the want of special notice to the plaintiff of the obvious condition of the water-gap was insufficient to raise fairly and reasonably the inference of negligence.

The judgment of this court is that the judgment of the Circuit court be affirmed.